UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Innotext, Inc.,

    Plaintiff,

v.                                                  Case No. 08-11077

Petra'Lex USA, Inc., *et al.*,          Honorable Sean F. Cox

    Defendants.

_____/

## OPINION & ORDER GRANTING
## DEFENDANT'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW

In this action, Plaintiff asserts that it is owed sales commissions from Defendant Petra'Lex USA, Inc. A jury trial in this matter began on June 21, 2010. At the close of Plaintiff's proofs on June 28, 2010, Defendant moved for judgment as a matter of law as to all claims, pursuant to FED. R. CIV. P. 50(a). The parties have briefed the issues and the Court heard oral argument on the motion on June 28, 2010. For the reasons set forth below, Defendant's Motion shall be GRANTED and Plaintiff's claims shall be DISMISSED WITH PREJUDICE.

BACKGROUND

Plaintiff Innotext, Inc. ("Plaintiff" or "Innotext") is a Michigan corporation. (Stipulation of Facts in Joint Final Pretrial Order, Docket Entry No. 53, at 11). Collin Stafford ("Stafford") is the Vice President of Innotext. (*Id.*).

Defendant Petra'Lex USA, Inc. is a North Carolina corporation incorporated in 1999 and owned by Charles Sadosky ("Sadosky") and his wife, Karen Sadosky. (Stipulation of Facts in Joint Final Pretrial Order, Docket Entry No. 53, at 11).

1

It is undisputed that Sadosky and his wife also have an ownership interest in: 1) a company in Honduras called Petra'Lex S. de R.L.; 2) a company in China called PTX Textiles, Inc.; and 3) another U.S. company called PTX Commercial, Inc.

Plaintiff's Amended Complaint asserts the following four counts: "Breach of Contract" (Count I); Violation of MCLA § 600.2961" (Count II); "Breach of Implied Contract" (Count III); and "Unjust Enrichment/Procuring Cause" (Count IV).

Although Plaintiff originally sued two Defendants in this action (Petra'Lex USA, Inc. and PTX Commercial, Inc.), Plaintiff agreed to voluntarily dismiss all claims against PTX Commercial, Inc. at the summary judgment stage. (*See* Docket Entry No. 41 at 10 n.1; Docket Entry No. 51 at 2 & 24).

As to its claims against Defendant Petra'Lex USA, Inc., Plaintiff seeks to recover commissions that it claims to have earned relating to three products, lines or programs that it claims were developed for, and sold to, Johnson Controls, Inc. ("JCI"): 1) a seat cushion assembly called "Under Covers;" 2) a fabric called "Grid Mesh;" and 3) an alleged "Duon replacement" fabric called "Trem."

It is undisputed that the only sales Plaintiff made of Grid Mesh were sample orders. "Should Plaintiff show liability for commissions on Grid Mesh, Plaintiff is limited to $120.00 in damages." (Stipulation of Facts in Joint Final Pretrial Order, Docket Entry No. 53, at 11).

With respect to Under Covers, "[i]n November 2006, Johnson Controls awarded the Under Cover Program to Petralex S. de R.L. Production began in February, 2007 and sales began in April, 2007." (Stipulation of Facts in Joint Final Pretrial Order, Docket Entry No. 53, at 11).

2

Trial in this matter began on June 21, 2010. At close of Plaintiff's proofs on June 28, 2010, Defense Counsel made an oral motion pursuant to FED. R. CIV. P. 50(a), seeking judgment as a matter of law on all claims. The Court heard oral argument on the motion on June 28, 2010.

In addition, on June 29, 2010, Defendant filed a brief in support of its motion. (Docket Entry No. 70).

On June 30, 2010, Plaintiff filed a brief in opposition to the motion. (Docket Entry No. 71). Plaintiff's response references very little trial testimony. Moreover, Plaintiff's response relies on materials previously submitted to the Court during the summary judgment stage of this case, such as Stafford's Affidavit. Plaintiff's reliance on such materials to oppose Defendant's Rule 50 Motion is misplaced. In ruling on the motion, this Court considers the *evidence presented at trial.*

## STANDARD OF REVIEW

Defendant brings the instant motion under Rule 50(a) of the Federal Rules of Civil Procedure. Rule 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may: (A) resolve that issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, the Court applies the standard of review used by the courts of the state whose substantive law governs the action. *Betts v. Costco Wholesale Corporation*, 558 F.3d 461, 466 (6th Cir. 2009). It is undisputed that Michigan law governs the

claims in this action. "Michigan courts use the terms 'directed verdict' and 'judgment notwithstanding the verdict' rather than judgment as a matter of law." *Brocklehurst v. PPG Indus., Inc.,* 123 F.3d 890, 894 n.3 (6th Cir. 1997). A directed verdict may be granted only if, after viewing the evidence in the light most favorable to the party opposing the directed verdict, reasonable minds could not differ on any question of material fact. *Betts,* 558 F.3d at 467.

ANALYSIS

I. Based Upon The Evidence Presented At Trial, The Jury Would Not Have A Legally Sufficient Evidentiary Basis To Find A Contract Between Plaintiff And Defendant.

In its Rule 50 Motion, Defendant challenges Plaintiff's contract claims on numerous grounds. As set forth below, the Court shall grant Defendant's Rule 50 Motion as to Plaintiff's contract claims because, even when the evidence presented at trial is viewed in the light most favorable to Plaintiff, the jury would not have a legally sufficient evidentiary basis to find a contract between Plaintiff and Defendant under Michigan law.

As the parties agree, under Michigan law, in order to form a contract there must be a "meeting of the minds" between the parties on all essential terms of the contract. Whether there has been a meeting of the minds is "judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v. Mercy Memorial Hospital*, Corp., 194 Mich.App. 543, 548 (1992).

As explained below, the Court agrees with Defendant that there was insufficient evidence presented at trial to establish that the parties had a meeting of the minds as to the essential terms of the alleged contract.

  A. Plaintiff Has Presented Insufficient Evidence To Establish That There Was A Meeting Of The Minds As To The Parties To The Alleged Contract.

4

Defendant asserts that there was insufficient evidence presented at trial to establish that the parties had a meeting of minds as to the parties to the alleged contract.

Plaintiff alleges that its contract was with Defendant Petra'Lex USA, Inc., and Stafford testified at trial that it is his understanding that the contract was with Defendant Petra'Lex USA, Inc. Defendant contends, however, that "Stafford's testimony does not establish that understanding from the June, 2002 meeting when the contract was allegedly formed. There is no objective evidence, whether express words or acts by Sadosky, that Sadosky was representing Defendant, rather than PTX Textiles, Inc. or Petra'Lex S. de R.L." (Def.'s Br. at 2).

In response to Defendant's Rule 50 Motion, Plaintiff contends that "[t]here was an agreement on the parties as Mr. Stafford was representing Plaintiff at the meeting and Mr. Sadosky's business card indicated he was representing PetraLex USA, Inc." (Pl.'s Resp. Br. at 9-10).

Again, whether there has been a meeting of the minds is "judged by an objective standard, looking to the *express words of the parties and their visible acts*, not their subjective states of mind." *Kamalnath v. Mercy Memorial Hospital*, *Corp.,* 194 Mich.App. at 548 (emphasis added). The Court agrees with Defendant that, the evidence presented at trial regarding the parties' express words and visible acts is insufficient to establish that there was a meeting of the minds as to the parties to the alleged contract.

Stafford testified that the first time he met Sadosky was on June 4, 2002. (6/22/10 Trial

5

Tr. at 4-5).[1] Stafford picked Sadosky up at the airport and they went to a meeting at Intier's[2] headquarters in Farmington Hills, Michigan. (*Id*. at 5). They met with Mr. Wolcox at Intier and had an hour or so meeting. During that meeting, Sadosky told Wolcox and Stafford that he had "this sewing plant in Honduras" that "employed like a thousand people. It was – I believe – 50,000 square feet." (*Id*.) Stafford testified that Sadosky also talked about "his US company." (*Id*.).

Stafford testified that Sadosky also said something about having "an affiliate" in Shanghai. (*Id*. at 7). Sadosky told Stafford that the affiliate in Shanghai "was essentially a company that bought and sold and marketed and developed textiles." (*Id*.). Stafford testified that textiles are different than "cut and sew," which is a process where parts are put together. (*Id*.).

Stafford testified that Sadosky provided a business card *at the meeting at Intier* that had "Petra Lex USA" on it along with his name and phone number. (*Id*. at 8).

After leaving Intier, Stafford and Sadosky went to a restaurant in Farmington Hills to have lunch. It is at this lunch meeting that Plaintiff claims that Plaintiff and Defendant Petra'Lex USA, Inc. entered into the oral contract that is the subject of this litigation. Stafford testified that he "explained to him, you know, *my* interest in *this company*." (*Id*. at 9) (emphasis added). Stafford testified:

> Q. Okay. And at this point in time -- this was in 2002?

---

[1]Neither party submitted any portions of the trial transcript to the Court. Attached as Ex. A to this Opinion & Order is a rough copy of relevant portions of Mr. Stafford's testimony.

[2]Intier was a prospective client.

|   |   |
|---|---|
| A. | Yes. |
| Q. | Was Mr. Sadosky or *any of his affiliates* doing business in the automotive industry? |
| A. | No, I asked him that question and he told me that, no, he had not done any business in the automotive industry at all. |

(*Id*. at 9). They discussed selling in the automotive industry in general. Stafford told Sadosky that it was a very tough business and that, "if you come into this business, you're a non-entity, you have very low credibility, nobody knows who you are, you're a brand new person." (*Id*.).

Stafford testified that they had discussions about sales representatives in general and how they operate. (*Id*. at 11). Stafford testified that he told Sadosky that "sales representatives usually work on the basis of representing a company" and that they are "paid on commission on sales that they bring into the company or on projects they develop." (*Id*.). Stafford further testified:

|   |   |
|---|---|
| A. | Yes, we did. I told him that this is *a new company*. There was a considerable amount of time and effort and commitment on my part to get *his company* up and running in the automotive industry. It was a time where no sales commission would probably be generated, and that was my commitment to him, what was what *I* had to commit to if I wanted him – to *represent him*. |
|   | And he understood that. |
| Q. | Okay. Did you discuss any further with the timing? |
| A. | Yeah, I told him that because as a sales representative for *a new company*, you have a lot of upstream costs, where, you know for three years you're developing a sales operation for *this company*. And so the downstream side of that would be that commissions were paid for the life of programs that the sales representative would bring in. And even sometimes for the life of the part, because I had programs and parts that I had with General Motors that lasted ten and twelve years. |

Q. Okay. At the meeting did you make *him* an offer?

A. Yes, I did.

Q. What did you tell him?

A. I said – *I told him that I would be extremely interested in representing his company*. I thought that he had – as I said before, I like little niche markets, people have an advantage. I thought that *his company had an advantage in its low-cost sewing*.³ I thought that could generate a lot of business . . .

Q. *And what was your offer you made him?*

A. I said to him that *I* would represent *his companies* for three percent sales commission for the life of the parts or the life of the programs. And he listened and said, – I think he kind of nodded and accepted what I told him.

Q. How did he accept?

A. And I said, you know –

Q. No. How did he accept?

A. Oh, he said to me, "That sounds like a good deal. Okay." And we had this handshake agreement.

Q. Did you shake his hand?

A. Yes.

(*Id*. at 11-13).

Thus, viewing Stafford's testimony in the light most favorable to Plaintiff, Sadosky presented a Petra'Lex business card at the meeting at Intier – not at the lunch meeting later that

---

³During the meeting at Intier, Sadosky mentioned that he had a "sewing plant in Honduras," an apparent reference to Petra'Lex S. de R.L.

8

day. Stafford also testified that during that meeting at Intier on June 4, 2002, which occurred prior the lunch meeting, Sadosky discussed several companies that he had an interest in, including: 1) an unidentified "US company;" 2) a "sewing plant in Honduras;" 3) an "affiliate in Shanghai;" and 4) "Petra Lex USA." Thus, prior to the lunch meeting on June 4, 2002, all of these various companies had been discussed.

Notably, the express language that Stafford used to communicate his offer to Sadosky at the lunch meeting on June 4, 2002, did not include the name of a single company. That is, in making the alleged offer to Sadosky, Stafford did not indicate he was making the offer on behalf of Innotext or on his own behalf. More importantly, in making the alleged offer to Sadosky, Stafford never identified which of Sadosky's several companies he was offering to represent. In addition, Plaintiff has not identified any evidence to indicate that Sadosky accepted the offer on behalf of Petra'Lex USA, Inc., as opposed to Petra'Lex S. de R.L. or PTX Textiles, Inc.

Accordingly, the Court concludes that the evidence presented at trial, even when construed in the light most favorable to Plaintiff, is insufficient to establish that there was a meeting of the minds as to the parties to the alleged contract.

> B.  <u>Plaintiff Has Presented Insufficient Evidence To Establish That There Was A Meeting Of The Minds As To The Subject Of The Contract.</u>

In its Rule 50 Motion, Defendant also asserts that there is no evidence to establish that there was a meeting of the minds as to the alleged "relating to any sales opportunity brought to defendant" term.

During oral argument on Defendant's Rule 50 Motion, the Court asked Defense Counsel to articulate the contract that is alleged in this case. Plaintiff identified the alleged contract as follows:

9

> The contract is that the plaintiff and defendant Petra Lex USA agreed that plaintiff would act as sales representative for Petralex USA. Petra Lex USA would pay 3 percent commission on all sales made by defendant or their affiliated companies to customers in the automotive industry **relating to any sales opportunity brought to defendant by plaintiff** for the life of the program. That's the agreement here. And that's the handshake agreement that was reached on June 4, 2002.

(6/28/10 Tr. at 16)[4] (emphasis added). Plaintiff's assertion that Defendant agreed to pay him commissions on any "sales opportunity brought to defendant by plaintiff" is central to Plaintiff's case because in this action Plaintiff is seeking to recover commissions on sales orders that Plaintiff did not obtain.

The Court asked Plaintiff's Counsel to identify the evidence presented at trial to establish that Sadosky agreed to the above alleged terms:

> THE COURT: Hold on a second. Where is the evidence that Mr. Sadosky agreed to these terms?
>
> MR. TOMLINSON: The evidence that Mr. Sadosky agreed to these terms was he stood up and shook hand with Mr. Stafford at the meeting at Cosi . . .
>
> . . . .
>
> THE COURT: What did Mr. Sadosky say or what evidence do you have that he agreed to that quote, unquote concept of opportunity such that your client would be owed a commission?
>
> MR. TOMLINSON: He received the proposal that my client made at that meeting and extended his hand and said "we've got a deal" or "that's a good deal" or "that sounds like a good deal" and shook hands with my client.

(6/28/10 Tr. at 16-17 & 23).

---

[4] Attached as Exhibit B to this Opinion & Order is a rough copy of the transcript of the oral argument on June 28, 2010.

Plaintiff has not directed this Court to any portion of Stafford's trial testimony wherein he testified that his offer to Sadosky on June 4, 2002, included that Plaintiff would be paid commissions on all sales made by Defendant to automotive customers "relating to any sales opportunity brought to defendant by plaintiff."

While Stafford did testify, during his direct examination, as to the offer he made to Sadosky on June 4, 2002, that testimony did not include discussion of this alleged term. (*See* 6/22/10 Trial Tr. at 11).

| Alleged Agreement Plaintiff Is Attempting To Establish: | Stafford's Testimony at Trial: |
| --- | --- |
| Petra Lex USA would pay 3 percent commission on all sales made by defendant or their affiliated companies to customers in the automotive industry **relating to any sales opportunity brought to defendant by plaintiff** for the life of the program. (6/28/10 Tr. at 16) (emphasis added). | Q. And what was your offer you made him?<br>A. I said to him that I would represent his companies for three percent sales commission for the life of the parts or the life of the programs. And he listened and said, – I think he kind of nodded and accepted what I told him. (6/22/10 Trial Tr. at 11). |

Moreover, even if Stafford had testified that he included the "relating to any sales opportunity brought to defendant by plaintiff" term in his alleged offer to Sadosky on June 4, 2002, there is no evidence to establish that the parties had a "meeting of the minds" as to the meaning of the amorphous concept of "bringing a sales opportunity" to Defendant without actually making a direct sale. Plaintiff did not present any evidence at trial to establish that Stafford and Sadosky had any discussion as to what a "sales opportunity" was, what it would

11

mean to "bring" an opportunity to Defendant, or when such commissions would be due. Thus, there was no evidence presented to the jury that could establish that the parties had a meeting of the minds as to this key alleged term.

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's contract claims.

II.     Absent A Contract Between The Parties, Plaintiff Cannot Proceed On A Claim Under The SRCA.

As set forth above, the Court concludes that, based upon the evidence presented at trial, the jury would not have a legally sufficient evidentiary basis to find a contract between Plaintiff and Defendant and Defendant is entitled to judgment as a matter of law as Counts I & III.

In light of that ruling, Plaintiff cannot proceed on a claim under Michigan's Sales Representatives Commission Act, § 600.2961 ("SRCA") under Count II. The SRCA does not create a new obligation or impose a duty to pay sales commission, and a principal who is not liable under the common law is not liable under the SRCA. *Flynn v. Flint Coatings, Inc.*, 230 Mich.App. 633 (1998); *see also Clark Brothers Sales Co. v. Dana Corp.*, 77 F.Supp.2d 837, 852 (E.D. Mich. 1999); *Khurshat v. General Bearing Corp.*, 2007 WL 1018225 at * 11 (E.D. Mich. 2007). Rather, the statute merely changes the remedy for failure to pay sales commissions under an existing agreement. Thus, Defendant is entitled to judgment as a matter of law on Count II.

III.    Absent A Contract Between The Parties, The "Procuring Cause Doctrine" Has No Application In This Case.

The Court notes that Count IV of Plaintiff's Amended Complaint is titled "Unjust Enrichment/Procuring Cause."

As Plaintiff recognizes, "[w]here a contract is silent regarding post-termination

12

commissions, an agent may recover post-termination commissions by demonstrating that it is the procuring cause." (Pl.'s Resp. Br. at 17). In other words, the "procuring cause doctrine applies in cases where the parties have an existing contract governing the payment of sales commissions but the contract is silent regarding the payment of post-termination commissions." *Warring v. Total Manufacturing Sys., Inc.*, 2007 WL 2257719 (Mich.App. 2007) (citing *Reed v. Kurdziel*, 352 Mich. 287, 294 (1958)); *see also Leger v. Image Data Svs.*, 2002 WL 1463555 (Mich.App. 2002) ("[T]he procuring cause doctrine is but a subset of contract law, acting as a default rule for interpreting a contract that is silent regarding" post-termination commissions.). Thus, if there is no contract between Plaintiff and Defendant, the procuring cause doctrine has no application.

Accordingly, to the extent that Count IV seeks recovery of commissions under the procuring cause doctrine in the absence of a contract between the parties, the claim fails.

IV.     Defendant Is Entitled To Judgment As A Matter Of Law On Plaintiff's Unjust Enrichment Claim.

The parties agree that the elements of a claim for unjust enrichment are: 1) the receipt of a benefit by the defendant from the plaintiff; and 2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Barber v. SMH (US), Inc.*, 202 Mich.App. 366, 375 (1993).

Defendant asserts that Plaintiff has provided no evidence that Defendant received or retained any benefit from Plaintiff. (Def.'s Br. at 8). Defendant asserts that the only alleged benefit received and retained by Defendant is sales commissions. It further asserts that "Plaintiff has proffered no evidence that Petra' Lex U.S.A., Inc., the only defendant in this case, ever received any revenues on sales." (*Id.*). Defendant contends that it did not receive any revenues or commissions from sales on the programs at issue and "it could not have retained what it did

13

not receive." (*Id.*).

In response to Defendant's Rule 50 Motion, Plaintiff asserts that it was involved in soliciting the Under Cover Program "on behalf of Defendants [sic] right through the November, 2006 meeting when JCI announced that it had awarded the Under Cover Program to Defendant." (Pl.'s Resp. Br. at 19). Plaintiff further asserts that the "result of the successful solicitation is that Defendant has already sold more than $20 million worth of parts to JCI and has *retained all of the benefit of those sales* without compensating the Plaintiff for Plaintiff's solicitation efforts." (*Id.*) (emphasis added). Thus, Plaintiff claims that Defendant was unjustly enriched with respect to sales made on the Under Cover Program.

Plaintiff's brief does not, however, respond to Defendant's argument that this claim fails because there is no evidence that Defendant Petra' Lex U.S.A., Inc. – the only Defendant in this action – received or retained any sales revenues or sales commissions on any of the programs at issue, including Under Covers. Thus, Plaintiff has not directed this Court to any evidence presented at trial that would establish that Defendant received or retained any sales revenue or sales commissions on Under Covers.

Although in its Response Brief Plaintiff asserts that the Under Cover Program was awarded to "Defendant" (i.e., Petralex USA, Inc.), in the Joint Final Pretrial Order, the parties *stipulated* that "[i]n November 2006, Johnson Controls awarded the Under Cover Program to *Petralex S. de R.L.*" (Stipulation of Facts in Joint Final Pretrial Order, Docket Entry No. 53, at 11) (emphasis added).

Moreover, Sadosky testified at trial that Defendant has never received any money as a result of sales of Under Covers, Trem, or Grid Mesh.

14

Accordingly, to the extent that Plaintiff's unjust enrichment claim seeks to recover sales revenue or sales commissions "retained by Defendant," there was insufficient evidence presented at trial to support that claim. *See Hershey v. Capital Realty Svs. Inc.*, 2009 WL 1163409 (E.D. Mich. 2009) (dismissing unjust enrichment claim where plaintiff sued an individual based on services provided to companies owned by that individual, and therefore there was no evidence the individual received a benefit from plaintiffs, noting that under Michigan law, there is a presumption that the corporate form will be respected).

In addition, although Plaintiff's response to Defendant's Rule 50 Motion does not indicate that Plaintiff is seeking an award for the "fair market value" of any services that were actually provided to *Defendant* (as opposed to Petra'Lex S. de R.L. or PTX Textiles, Inc.) the Court concludes that such a claim would also lack a sufficient evidentiary basis. Plaintiff presented no evidence at trial as to "fair market value" of such services, such as the hourly rate for such services in the relevant market, or any other evidence that would enable to the jury to make such an award without resort to sheer speculation.

Accordingly, the Court concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's unjust enrichment claim.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Rule 50 Motion for judgment as a matter of law is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

                S/Sean F. Cox
                Sean F. Cox
                United States District Judge

Dated: July 6, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 6, 2010, by electronic and/or ordinary mail.

                S/Jennifer Hernandez
                Case Manager